UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LONNIE LEE MANN,

                     Petitioner,               Case No. 1:18-cv-1072

v.                                            Honorable Robert J. Jonker

TONY TRIERWEILER,

                     Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Lonnie Lee Mann is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan.  On June 6, 2013, Petitioner pleaded *nolo contendere* in the Barry County Circuit Court to one count of first-degree home invasion in violation of Mich. Comp. Laws § 750.1101(2) and to his status as a habitual offender-third offense, Mich. Comp. Laws § 769.11.  On July 11, 2013, the court sentenced Petitioner to a prison term of 15 to 40 years, to be served consecutively to a 5 to 15 year term of imprisonment for a 2006 breaking and entering conviction—a crime for which he was out on parole when he committed this home invasion—but concurrently to a 15 to 40 year sentence imposed for a first-degree home invasion conviction from Calhoun County imposed on June 3, 2013.

On August 31, 2018, Petitioner filed his habeas corpus petition raising five grounds for relief, as follows:

    I.      Petitioner was denied his Sixth Amendment right to defend against the charges and due process of law when the prosecution failed to timely provide notice of their intent to enhance Petitioner's sentence pursuant to the habitual offender statute.

II.    The Petitioner was denied his constitutional right to effective assistance of counsel where his trial attorney and appellate attorney failed to object to the erroneous scoring of PRV 1, PRV 2, and PRV 5, which in effect resulted in an invalid sentence based upon inaccurate information.

III.    [Petitioner] was denied [his] constitutional right to effective assistance of appellate counsel and his right to due process as guaranteed by the Fourteenth Amendment.

IV.    [Petitioner] submits that good cause and actual prejudice has been presented for his failure to bring the issues raised in his post-conviction appellate proceedings due to ineffective assistance of counsel.

V.    Judicial fact-finding at sentencing based on less than proof beyond a reasonable doubt violated [Petitioner's] Fifth, Sixth, and Fourteenth Amendment rights.

(Pet., ECF No. 1, PageID.5-14.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

Petitioner's habeas issues relate to pretrial proceedings and sentencing matters. Therefore, the facts relating to Petitioner's crime are not at issue.  At his plea hearing, by stipulation of the parties, the trial court read into the record, as a factual foundation for Petitioner's plea, an excerpt from a Michigan State Police report:

[T]his was investigated on September 24th, 2012, by Trooper Keto of the Michigan State Police.  He was dispatched to a breaking and entering, responded to the incident, meeting with the victim, Jerry Beard, who reported forced entry in his residence and theft of multiple firearms, electronics, and jewelry.  This venue was 4834 Mud Lake Road, Barry-Johnston Township, Barry County, State of Michigan.

He was then advised that the Battle Creek Police Department was at the scene of a recovered stolen vehicle that matched the description of the vehicle seen driving

eastbound on Mud Lake Road at the time of the break-in.  A camera that was stolen from the venue, that being Mr. Beard's house, was found and recovered from the stolen vehicle.  Trooper Keto then went to the Calhoun County Jail, speaking with Troy Wilkins and Lonnie Mann, codefendants.  During his interview with Troy Wilkins, he admitted to being in the theft and sale of the stole—stolen items, indicating the defendant was with him during the break-in.

(Plea Hr'g Tr., ECF No. 9-3, PageID.114.)

On October 1, 2012, Petitioner was apprehended following another home invasion in Calhoun County.  Petitioner's prosecution for that crime ran parallel to his Barry County prosecution.  Petitioner entered a *nolo contendere* plea[1] in the Calhoun County case on May 6, 2013. Petitioner was offered a similar deal by the Calhoun County prosecutor—one count of first-degree home invasion, habitual offender-third offense, and all other charges dismissed.  The Calhoun County plea deal, however, did not include any sentencing agreement.  The parties referenced a minimum sentence range of 117 to 240 months based on a cursory sentencing guidelines calculation, so Petitioner was aware of that range as a worst-case scenario.  Petitioner was well-aware that he could be sentenced to any minimum sentence within that range.  Petitioner was sentenced in Calhoun County on June 3, 2013.  The court imposed a sentence of 15 to 40 years.

The Calhoun County sentence was then used as the basis for a plea deal in Barry County.  The prosecutor and defense counsel in Barry County and the prosecutor and defense

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty.  Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

counsel in Calhoun County agreed that the sentences would run concurrently.  Apparently, because the sentences would be concurrent and the guidelines scoring was likely to be the same in Barry County, the parties agreed to a 15-year sentence.  The court agreed to proceed with the plea with a *Killebrew* agreement of 15 years.[2]

On July 11, 2013, the court imposed a sentence of 15 to 40 years.  Because Petitioner was on parole when he committed the home invasion offenses, he received no credit on the home invasion sentences for time spent in jail prior to sentencing.  Moreover, because the Calhoun County sentence was imposed 38 days before the Barry County sentence, the Calhoun County minimum would expire 38 days before the Barry County minimum.

At the Barry County sentencing, Petitioner attempted to convince the trial court that the Calhoun County plea was based on a promise that Petitioner's minimum sentence would be 111 months.  Petitioner claimed further that the Barry County prosecutor and defense agreed that the Barry County sentence would be the same as the Calhoun County sentence.  Petitioner's statements—that his minimum sentence was supposed to be 111 months and that the Barry County and Calhoun County sentences were supposed to be the same—find no support in the record of the Calhoun County prosecution.  *See Mann v. Trierweiler*, No. 1:18-cv-1162 (W.D. Mich.) (Plea Hr'g Tr., ECF No. 9-9, Sentencing Hr'g Tr., ECF No. 9-10.)

With the assistance of appointed appellate counsel, Petitioner sought leave to appeal raising one issue: the trial court's sentence was impermissibly based on judge-found facts in violation of the Sixth Amendment.  By order entered June 4, 2014, the Michigan Court of

---

[2] In *People v. Killebrew*, 330 N.W.2d 834, 842-43 (Mich. 1992), the Michigan Supreme Court held that, when a defendant and the prosecutor enter into a prosecutorial recommendation of a specific sentence, the trial court may not deviate from the agreed sentence without first allowing the defendant to withdraw his plea.  In Petitioner's case, the trial court went a step further and, at the plea hearing, informed Petitioner that she intended to follow the recommended sentence.  (Plea Hr'g Tr., ECF No. 9-3, PageID.112.)

Appeals denied leave "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 9-9, PageID.200.)

Petitioner then sought leave to appeal in the Michigan Supreme Court raising the same issue he raised in the court of appeals.  The supreme court held Petitioner's application in abeyance pending a decision in *People v. Lockridge*, No. 149073 (Mich.).  (Mich. Order, ECF No. 9-10, PageID.261.)  By order entered October 28, 2015, in lieu of granting leave to appeal, the court remanded the case to the trial court "to determine whether the court would have imposed a materially different sentence" if the sentencing guidelines were discretionary—which they were because of the decision in *Lockridge*—rather than mandatory.  (Mich. Order, ECF No. 9-10, PageID.260.)

On March 14, 2016, Petitioner filed a notice of intent to forego the *Lockridge* remand after his counsel informed Petitioner that it was a possibility that the trial court would impose a longer minimum sentence upon resentencing.  (Barry Cty. Cir. Ct. Docket Sheet, ECF No. 9-1, PageID.86.)  Several months later, however, Petitioner filed a *pro per* motion or resentencing which the trial court denied.  (*Id.*)

Petitioner then filed a pro per motion for relief from judgment raising the same issues he raises as issues I-IV in his habeas petition.  The trial court denied the motion for lack of merit.  (Barry Cty. Cir. Ct. Order, ECF No. 9-6, PageID.137.)  Petitioner sought leave to appeal the trial court's order in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders dated September 12, 2017, and July 3, 2018, respectively.  (Mich. Ct. App. Order, ECF No. 9-11, PageID.281; Mich. Order, ECF No. 9-12, PageID.318.)  This timely petition followed.

5

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Judge-found Facts at Sentencing

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.

Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. Justice Souter has since described the holding in *Apprendi* as follows:

> We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, *in the absence of a jury waiver*; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant.

*Rita v. United States*, 551 U.S. 338, 387 (2007) (J. Souter dissenting) (emphasis added).[3]

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). The *Blakely* Court recognized, however, that "nothing prevents a defendant from waiving his *Apprendi* rights." *Blakely*, 542 U.S. at 310. In responding to Justice Breyer's dissent, the majority explained "that the Sixth Amendment was not written or the benefit of those who choose to forgo its protection." *Id*. at 312.

---

[3] It is noteworthy that Apprendi, like Petitioner, entered a plea. Apprendi, however, expressly reserved the right to challenge the sentence enhancing factor. The Michigan Court Rules also permit the entry of a conditional plea that has the effect of preserving an issue or issues for appeal despite the plea. Mich. Ct. R. 6.301(C)(2). In Petitioner's case, however, his plea was not conditional.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.  In dissent, Justice Stevens, the author of the first majority opinion, explained part of the reason he thought the remedy adopted in the second majority opinion went too far was because the Sixth Amendment rights were waived in so many cases already.  Justice Stevens explained:

> [I]t is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury.  *Patton v. United States*, 281 U.S. 276, 312-313, (1930).  In *Blakely* we explained that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."  542 U.S., at 310.  Such reasoning applies with equal force to sentences imposed under the Guidelines.  As the majority concedes, *ante*, at 758, only a tiny fraction of federal prosecutions ever go to trial.  See Estimate, at 2 ("In FY02, 97.1 percent of cases sentenced under the guidelines were the result of plea agreements").  If such procedures were followed in the future, our holding that *Blakely* applies to the Guidelines would be consequential only in the tiny portion of prospective sentencing decisions that are made after a defendant has been found guilty by a jury.

*Booker*, 543 U.S. at 276-77.  The second majority also indicated that guilty plea cases do not typically implicate Sixth Amendment rights:

> It is, of course, true that the numbers show that the constitutional jury trial requirement would lead to additional decisionmaking by juries in only a minority of cases.  *See post*, at 774 (STEVENS, J., dissenting in part).  Prosecutors and defense attorneys would still resolve the lion's share of criminal matters through plea bargaining, and plea bargaining takes place without a jury.  *See ibid*.

*Booker*, 543 U.S. at 758.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  Petitioner

was sentenced in Calhoun County just days before the Supreme Court decided *Alleyne*. He was sentenced in Barry County about a month after *Alleyne*.

By the time Petitioner filed his appeals, however, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013). The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (emphasis added). The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

As Petitioner's cases wound their way through Michigan's appellate courts, the Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue. *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014). The supreme court held Petitioner's applications for leave in abeyance pending its decision in that case. The Michigan Supreme Court decided the *Herron* decision was wrong, reasoning that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they

increase the "mandatory minimum" sentence under *Alleyne*.  *People v. Lockridge*, 870 N.W.2d 502. 506 (Mich. 2015) (emphasis in original).  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review."  *Id.* at 523.  Petitioner's cases were still pending on direct review at the time the *Lockridge* court reached its decision.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ."  *Id*. at 522 (footnote omitted).  If a remand was appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ."  *Id*. at 524.  The supreme court remanded Petitioner's case for resentencing.

Because the trial court, once it is no longer bound by the unconstitutional restraint of mandatory minimum sentencing guidelines, would be free to impose a "materially different sentence" that would be higher than the initial sentence, the supreme court offered defendants whose cases had been remanded "an opportunity to avoid resentencing . . . ."  *Id*.  Petitioner, upon the advice of his appellate counsel, availed himself of that opportunity.  He declined to be resentenced.[4]  (Barry Cty. Cir. Ct. Docket Sheet, ECF No. 9-1, PageID.86.)  Where a "defendant [is] clearly aware of the holding in *Lockridge* and the relief available under *Lockridge*,

_____

[4] Several months later, Petitioner apparently changed his mind and sought resentencing; but, the trial court denied his motion.  (Barry Cty. Cir. Ct. Docket Sheet, ECF No. 9-1, PageID.86.)

and . . . [chooses] to decline that relief . . . the issue is waived." *People v. Dodson*, No. 328481, 2016 WL 6825439, at *6 (Mich. Ct. App. Nov. 17, 2016) (citing *People v. Carter*, 612 N.W.2d 144 (Mich. 2000)).

Petitioner contends he should be forgiven his waiver of the *Alleyne* issue because it was the product of ineffective assistance from his appellate counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner's appellate counsel advised Petitioner to forego the remand based on the possibility that the trial court might impose a higher minimum sentence. (Correspondence, ECF No. 9-7, PageID.181-188.) That advice, however, related specifically to the Calhoun County case.

(*Id.*)  In Barry County, Petitioner had some protection by virtue of the *Killebrew* agreement.  The trial court could have imposed a higher sentence; but, that would have permitted Petitioner to withdraw his plea.  Plea withdrawal would likely prove to be a pyrrhic victory—the testimony of his codefendant at trial would probably lead to a guilty verdict and a potentially higher sentence anyway.  Thus, Petitioner has failed to overcome the presumption that his appellate counsel's advice fell outside the wide range of reasonable professional assistance.

Moreover, Petitioner cannot show prejudice.  Although Petitioner initially chose to forego resentencing, the trial court considered and denied his *pro per* request for resentencing several months later.  Thus, when the trial court was given the option to resentence, it declined, effectively stating that the court would have imposed the same sentence even if the guidelines were not mandatory.

Finally, even if Petitioner had not waived the *Alleyne* issue, he could not prevail because he could not demonstrate that his minimum sentence was constrained by a violation of the Sixth Amendment for two reasons.  First, Petitioner signed an "Advice of Rights" form (Barry Cty. Cir. Ct. Docket Sheet, ECF No. 9-1, PageID.82), that waived his Sixth Amendment rights. *Blakely*, 542 U.S. at 310 ("[N]othing prevents a defendant from waiving his *Apprendi* rights."); *United States v. Ramirez*, 528 F. App'x 678, 679 (7th Cir. 2013) ("Counsel recognizes, however, that by pleading guilty Ramirez waived his right to have a jury, rather than the district judge, determine the drug quantity."); *United States v. Lefebvre*, 189 F. App'x 767, 774 (10th Cir. 2006) ("In this case, Mr. LeFebvre waived his right to a jury trial without qualification, thereby precluding him from challenging his sentence on grounds the district court committed constitutional *Booker* error by not affording him a jury determination on facts relevant to sentencing.").

Second, Petitioner's minimum sentence was derived from the parties' *Killebrew* agreement.  Petitioner specifically agreed to the 15-year minimum sentence.  The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'"  *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("*Lockridge* does not apply to defendant's sentences because defendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F3d 353, 364 (7th Cir. 2005) (concluding that a *Booker* challenge was not available because the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines),  *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App., Oct. 13, 2015) (P.J. Boonstra concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App., July 21, 2016); *People v. Faher*, No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines;  thus the constitutional concerns underpinning *Lockridge* and *Alleyne* are not implicated.").[5]  Therefore, even if Petitioner had not waived his right to resentencing or waived

---

[5] The Michigan courts have relied on the waiver that follows from accepting a specific sentence in other contexts as well.  *See, e.g., People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of 38 years, but guidelines range was 15 to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence."); *People v. Cobbs*, 505 N.W.2d 208, 213 (Mich. 1993) ("[W]e caution that a defendant who pleads guilty or nolo contendere with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender.").

his right to a jury trial, he waived his objection to the court's scoring of the guidelines by agreeing that a specific sentence of 15 years was acceptable, without reference to the guidelines.

For all of these reasons, Petitioner has failed to demonstrate that the state courts' rejection of his *Alleyne* claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on that claim.

### IV.    Timely Notice of Habitual Offender Sentencing Enhancement

Petitioner complains that he did not receive timely notice that the prosecutor would seek a sentence enhancement because of Petitioner's status as a habitual offender-third offense. Petitioner's claim is patently frivolous.

The Michigan habitual offender statute requires the prosecutor to provide notice that he or she will seek to enhance the defendant's sentence because of habitual offender status. The notice must be provided in writing within 21 days of arraignment on the underlying offense or, if arraignment is waived, within 21 days of filing the felony information.  Mich. Comp. Laws § 769.13.  The notice must list the prior convictions upon which the prosecutor will rely to support the enhanced habitual offender sentence.  *Id.*

In Petitioner's case, the prosecutor did not provide notice of intent to seek a sentence enhancement because of Petitioner's status as a habitual offender-third offense until after Petitioner entered his plea.  (Am. Felony Information, ECF No. 9-13.)  The reason for the delay is simple: (1) from the very beginning of the prosecution, the prosecutor intended to seek a sentence enhancement because of Petitioner's status as a habitual offender-***fourth*** offense; (2) the prosecutor provided timely notice of that intent (Felony Warrant, ECF No. 9-16; Felony Complaint, ECF No. 9-14; Felony Information, ECF No. 9-15); but (3) Petitioner's plea bargain reduced the habitual offender "charge" to habitual offender-third offense.  When Petitioner entered

his *nolo contendere* plea to the home invasion charge, he specifically acknowledged that he had been convicted of two earlier felonies to support the habitual offender-third offense sentence enhancement.  (Plea Hr'g Tr., ECF No. 9-3, PageID.115.)  The prosecutor amended the felony information accordingly.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's claim that he did not receive notice that complied with the Michigan habitual offender statute is a state-law claim.  Moreover, it is a state-law claim that the state courts rejected.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Therefore, the state court's rejection of Petitioner's claim as meritless—effectively a determination that the prosecutor's notice here complied with the statute—binds this Court.

In Petitioner's reply brief, he concedes that the notice issue may be a state-law issue not cognizable on habeas review.  (ECF No. 10, PageID.350.)  Nonetheless, Petitioner claims his counsel's failure to challenge the purportedly improper notice constituted ineffective assistance.

Accordingly, the merits of the notice claim may still have some relevance to habeas review. Because the prosecutor's notice that he would be seeking a habitual offender-fourth offense sentence enhancement necessarily includes all of the information that would appear in a habitual offender-third offense sentence enhancement notice, counsel's decision to forego Petitioner's sophistic argument can hardly be considered professionally unreasonable or prejudicial.

Although the prosecutor's compliance with the Michigan statute, a state-law issue, is conclusively resolved, the issue of constitutionally adequate notice remains.  The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.  *Id.*  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Petitioner cannot legitimately claim that he did not receive notice sufficient to permit him to defend against the habitual offender "charge" in this case. Every prior conviction that created Petitioner's habitual offender status was detailed in the initial charging documents. For Petitioner to suggest he could not defend because he only knew he was fighting a habitual offender-fourth offense and did not know he was fighting a habitual offender-third offense is utterly disingenuous.

## V.    Sentence Guidelines Scoring Errors

Petitioner contends that the trial court erred in scoring three of the prior record variables (PRVs) when calculating the minimum sentence range under the Michigan sentencing guidelines. The nature of Petitioner's argument, however, has shifted significantly over time. In the Michigan courts and in his initial petition, Petitioner's argument was as follows:

> A.    PRV 1 regarding prior high severity felony convictions was scored at 75 points for 3 or more prior high severity felony convictions. Petitioner claims the score should have been 0 because the underlying crimes no longer exist in Michigan. Petitioner argues that in evaluating severity his counsel should have argued and the court should have determined that the present equivalent felony is a low severity felony and, thus, the convictions should not have been counted as high severity felonies.

> B.    PRV 2 regarding prior low severity felonies was scored at 30 points for 4 or more prior low severity felony convictions. Petitioner claims that several of the convictions the court included did not satisfy the 10-year gap requirement and, therefore, should not have been counted. Petitioner contends his counsel should have argued and the court should have determined that the proper score was 10 points.

> C.    PRV 5 regarding prior misdemeanor convictions was scored at 10 points for 3 or 4 prior misdemeanor convictions. Petitioner claims that three of the four misdemeanors counted by the trial court do not satisfy the 10-year gap requirement and the fourth is not "countable" because it is not an offense against person or property. Petitioner argues his counsel should have argued and the court should have determined that the proper score was 0 points.

(See Pet., ECF No. 1, PageID.7-8; Pet'r's Mot. for Relief from J., ECF No. 9-7, PageID.155-157.)

The trial court rejected Petitioner's claims as meritless. (Barry Cty. Cir. Ct. Order, ECF No. 9-6,

PageID.137.)  The court of appeals concluded that the trial court's decision denying Petitioner's claims was not in error.  (Mich. Ct. App. Order, ECF No. 9-11, PageID.281.)  And, the supreme court concluded that Petitioner had failed to establish any entitlement to relief.  (Mich. Order, ECF No. 9-12, PageID.318.)

Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Moreover, the state courts' determinations that Petitioner's scoring challenges have no merit—that convictions counted as high severity felonies are, under state law, high severity felonies; that convictions counted as low severity felonies satisfy the 10-year gap requirement; and that convictions counted as misdemeanors satisfy the 10-year gap requirement[6]—are binding on this Court.

Petitioner attempts to bring his guidelines scoring challenge into the scope of habeas cognizability by claiming that counsel's failure to raise the challenges rose to the level of constitutionally ineffective assistance. As earlier discussed in *Strickland* 466 U.S. 668, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.

---

[6] Respondent provides persuasive arguments as to why the state courts got it right (Response, ECF No. 8, PageID.50-57).  For purposes of habeas review, however, the state courts' determinations conclusively resolve the issue.

The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  The state courts' binding determinations that Petitioner's state-law guidelines scoring challenges are meritless, therefore, foreclose Petitioner's further claim that his counsel rendered ineffective assistance by failing to raise those claims.

In Petitioner's reply to Respondent's response, Petitioner takes his guidelines scoring challenge in an entirely new direction: he claims his sentence is based on material misinformation.  (Pet'r's Reply, ECF No. 10, PageID.350-351.)  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

20

Petitioner now claims that one of the high severity felonies counted by the trial court simply did not exist.  Petitioner raises the claim for the first time in this Court.  Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  Petitioner has never fairly presented this particular claim to the state courts at any level.  Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

In this instance, even accepting as true that the third high-severity felony did not exist, any error would be harmless.  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

If Petitioner's claim is true, his score on PRV 1 would drop from 75 to 50, but he would remain in the same sentencing grid and have the same minimum sentence range.  Mich. Comp. Laws § 777.63.  Any error, therefore, would be harmless.  *See, e.g., United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998) ("Because the sentence range would be identical even if this court adopted Charles's assertions on the proper amount of drugs he sold, any calculation

errors on the part of the district judge would constitute harmless error."); *United States v. Dyer*, 478 F. App'x 308, 309 (6th Cir. 2012) ("[D]enying Dyer's motion on this ground amounted to no more than harmless error because applying the two-level reduction would not have lowed his sentencing guidelines range."); *United States v. Punschke*, 247 F. App'x 789, 794 (6th Cir. 2007) ("[A]ny error in counting this conviction would be harmless error.  That is, whether defendant is assessed two or three criminal history points, his criminal history category would still be II.  As a result, any error in counting his conviction would have no affect [sic] on the defendant's sentencing guideline range.")[7]

The same absence of prejudice that renders the scoring error harmless under *Brecht*, precludes a claim that counsel's failure rose to the level of constitutionally ineffective assistance under *Strickland*.   *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under

---

[7] The standard of "harmlessness" in the cited cases is likely the direct review standard of *Chapman v. California*, 386 U.S. 18 (1967) rather than the collateral review standard of *Brecht*.  That distinction, however, does not call for a different result.  Where the correction of a miscalculation does not alter the guideline range, the error is harmless under either definition.

*Strickland*].").    Therefore, any argument that trial or appellate counsel rendered ineffective assistance by failing to raise this issue is meritless.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.    A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."    28 U.S.C. § 2253(c)(2).    The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).    Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*    Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).    *Murphy*, 263 F.3d at 467.    Consequently, I have examined each of Petitioner's claims under the *Slack* standard.    Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*    "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).    In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.    Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Dated:  September 30, 2019                           /s/ Ray Kent
                                                    United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).